IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AMERICAN FIRST FEDERAL, INC., | |
| Plaintiff, | Civil No. 17-2022 (RBK/AMD) |
| v. | **OPINION** |
| CHANCE & MCCANN LLC, SHEILA M. MCCANN and KEVIN P. MCCANN, | |
| Defendants. | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon plaintiff American First Federal, Inc.'s ("Plaintiff") motion to dismiss Chance & McCann, LLC, Sheila M. McCann, and Kevin P. McCann's (collectively, "Defendants") counterclaims, strike Defendants' affirmative defenses, and for partial summary judgment (on counts five and six) (Doc. No. 18). For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff and Defendants. Kevin P. McCann ("Kevin") and Sheila M. McCann ("Sheila") are residents of Bridgeton, New Jersey. (Def. Opp. at 2). Kevin is the managing partner and primary shareholder of Chance &

McCann LLC,[1] a New Jersey law firm also located in Bridgeton, New Jersey. (*Id.*). Plaintiff is a Nevada corporation with its principal place of business located in Fallon, Nevada. (Compl. at 1). Venue is proper pursuant to 28 U.S.C. § 1391(a)—Defendants are residents of this district and the properties at issue are located here.

Factual Background

This dispute arises from loans currently in default.[2]

*The $975,000 Loan*

Sun National Bank ("Sun") entered into a loan agreement with McCann LLC in February 2010. (Compl. at 2). Sun agreed to loan $975,000 to McCann LLC, subject to the terms and conditions of the loan agreement. (*Id.*). McCann LLC executed and delivered a $975,000 promissory note to Sun. (*Id.*).

Sun obtained significant security for this loan. As security, Kevin and Sheila executed and delivered to Sun a mortgage dated February 11, 2010, which encumbered real property at 3435 Central Avenue, Ocean City, New Jersey 08226. (Compl. at 3). This mortgage was recorded in the Cape May County Clerk's Office on February 23, 2010. (*Id.*; Compl. Ex. B). They also executed and delivered a second mortgage dated February 11, 2010, which encumbered real property at 201 W. Commerce Street, Bridgeton, New Jersey 08302. (Compl. at 3). This mortgage was recorded in the Cumberland County Clerk's Office on February 22, 2010. (Compl. at 4; Compl. Ex. D). They also both executed and delivered to Sun a commercial guaranty for this loan. (Compl. at 4). Kevin additionally executed and delivered to Sun an assignment of leases and rents, by which Kevin assigned to Sun all rights, titles, and interests in

---

[1] The citizenship of other shareholders is not plead. This is addressed in the accompanying order.
[2] Defendants have not disputed any of the material facts submitted by Plaintiff. (*See, e.g.*, Def. Opp.; Pl. Rep. at 15).

and to all leases and rents from the Commerce Street property. (*Id.*; Compl. Ex. E). Kevin and Sheila also assigned to Sun all rights, titles, and interests in and to all leases and rents from the Central Avenue property. (*Id.*; Compl. Ex. F).

*The $100,000 Loan*

Sun entered into a second loan agreement with McCann LLC in February 2010. (Compl. at 5). The parties agreed that Sun would loan $100,000 to McCann LLC subject to the terms and conditions of a loan agreement. (*Id.*). On or about February 11, 2010, McCann LLC executed and delivered to Sun a promissory note. (*Id.*).

There was also significant security for this $100,000 loan. Kevin executed and delivered to Sun a mortgage dated February 11, 2010, which encumbered the Commerce Street Property. (*Id.*). This mortgage was recorded in the Cumberland County Clerk's Office on February 22, 2010. (*Id.*; Compl. Ex. G). Kevin and Sheila executed and delivered a second mortgage dated February 11, 2010, which encumbered the Central Avenue Property. (Compl. at 4-5). It was recorded in the Cape May County Clerk's Office on February 23, 2010. (Compl. at 5-6; Compl. Ex. H). As further security, Kevin and Sheila executed and delivered to Sun a third mortgage, which encumbered real property at 150 Love Lane, Bridgeton, New Jersey 08302.[3] (Compl. at 6). Kevin also executed and delivered to Sun an assignment of leases and rents from the Commerce Street Property, and Kevin and Sheila both executed and delivered to Sun an assignment of leases and rents from the Central Avenue Property. (Compl. at 6-7; Compl. Ex. I; Compl. Ex. J). These were recorded in the Cumberland County Clerk's Office on February 22,

---

[3] Plaintiff is not seeking to foreclose this third mortgage in this action, but specifically reserves and does not waive the right to do so. (*See* Compl. at 6).

3

2010, and the Cape May County Clerk's Office on February 23, 2010, respectively. (Compl. at 6-7).

*The $100,000 Loan Refinancing*

In September 2012, McCann LLC refinanced the $100,000 loan subject to the terms and conditions of a loan agreement dated September, 18, 2012. (Compl. at 7). On or about September 18, 2012, McCann LLC executed and delivered to Sun a promissory note in the principal amount of $96,195. (*Id.*; Compl. Ex. K). As additional security, Kevin and Sheila executed and delivered a commercial guaranty dated September 18, 2012, which guaranteed payment of McCann LLC's indebtedness to Sun. (Compl. at 7; Ex. L). The other security measures remained in place under the refinanced agreement. (Compl. at 7-8).

*Loan Assignment and Subsequent Modifications*

In June 2015, Sun assigned all of its rights, titles, and interests in all of the various loans and loan documentation to Plaintiff. (*See* Compl. at 8-9; Compl. Ex. A, Compl. Ex. M; Compl. Ex. N; Compl. Ex. O; Compl. Ex. P; Compl. Ex. K; Compl. Ex. Q; Compl. Ex. R; Compl. Ex. S; Compl. Ex. T).

In August, 2015, McCann LLC defaulted under the $975,000 loan. Plaintiff gave Defendants one business day to either agree to a modification agreement or begin default proceedings. (Compl. at 10; Def. Opp. at 3). Pursuant to this modification agreement, the parties agreed that, among other things, the principal balance was $881,772.27 and the maturity date was February 11, 2016. (Compl. at 10; Compl. Ex. U). This agreement also included a clause stating: "Upon Maturity or default, the interest rate shall be set at eighteen percent per annum." (Def. Opp. at 4).

McCann LLC defaulted again, this time under the modification agreement. (Compl. at 10). On or about March 3, 2016, the parties entered into a second modification agreement. (*Id.*; Compl at 10; Compl. Ex. V). This agreement extended the maturity of the loan until November 11, 2016, at which time the remaining principal ($879,122.78 pursuant to the second modification agreement), interest, and any other charges would be due in full. (Compl. at 11).

McCann LLC did not comply with these agreements. (Compl. at 11.) On February 10, 2017, Plaintiff sent Defendants letters advising them that all unpaid principal balances, all accrued and unpaid interest, and any other fees and owed expenses were immediately due and payable. (Compl. at 11; Compl. Ex. W). Defendants have not paid Plaintiff. Plaintiff seeks in this suit: foreclosure of the $975,000 first mortgage (count one); the right to credit bid/right to surplus funds from the sale of the Central Avenue property under the $100,000 second mortgage (count two); foreclosure of the $100,000 first mortgage (count three); the right to credit bid/right to surplus funds from the sale of the Commerce Street property under the $975,000 second mortgage (count four); breach of the $975,000 note and guarantees (count five); and breach of the refinanced note and guarantees (count six).

Defendants, however, assert counterclaims for: fraud in the inducement (count one); breach of contract (count two); and breach of the covenant of good faith and fair dealing (count three). At issue in this motion are counts five and six of Plaintiff's complaint, Defendants' counterclaims, and Defendants' twenty-one affirmative defenses to Plaintiff's claims.

## II. LEGAL STANDARD

<u>Motion to Dismiss Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

5

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This rule rests on the concern that considering documents outside the complaint would prejudice the plaintiff, who would lack notice to challenge them. *Id.* However, a "document integral to or explicitly relied upon in the complaint may be considered without

6

converting the motion [to dismiss] into one for summary judgment." *Id.* (citations and quotations omitted). "Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint," it removes the risk of prejudice. *Id.* (citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). This exceptions seeks to prevent "the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Id.*

Summary Judgment Standard

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must

7

at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. Defendants' Counterclaims

#### 1. Fraud in the Inducement

In order to establish a claim for fraudulent inducement, five elements must be shown: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment. *RNC Systems, Inc. v. Modern Technology Group, Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson*, 2008 WL 877870, at *4 (D.N.J. March 28, 2008)).

Plaintiff argues that Defendants have plead nothing more than legal conclusions. (Pl. Br. at 13). Plaintiff is correct. Defendants' counterclaim for fraud in the inducement constitutes a conclusive recitation of the fraud in the inducement standard in New Jersey, but nothing more. This is not enough to survive a motion to dismiss. At the very least *something* factual must be plead in order to satisfy the *Iqbal* plausibility assessment. *Iqbal*, 556 U.S. at 680. Defendants' fraud in the inducement claim must therefore be dismissed.

#### 2. Breach of Contract

Defendants allege that Plaintiff has breached express promises made by Sun—before the loan agreements were assigned—for "future commercially reasonable agreements to refinance

8

the Sun Loan Agreement." (Def. Ans. at 26). Defendants state that Plaintiff has "refused to enter into fair and commercially reasonable refinancing agreements and has instead sought to place the McCann [p]arties in default." (*Id.*).

This argument is barred by the express terms of the relevant loan documents. "Upon [d]efault, Lender may declare the entire unpaid principal balance under this [n]ote and all accrued unpaid interest immediately due, and then Borrower will pay that amount." (Compl. Ex. A; Compl. Ex. K). Plaintiff seeks to enforce its contractual rights. (*See* Compl.). To bar it from doing so by reading into the contract a provision nullifying bargained-for rights between sophisticated parties would be nonsensical. *See D'Argenzio v. Bank of America Corp.*, 877 F. Supp. 2d 202, 209 (D.N.J. 2012) (The loan document is "clear and did not provide for an automatic refinancing . . . Plaintiffs had an opportunity to read the loan commitment and if this allegedly crucial term was not included therein, they should not have signed the document"). Defendants' breach of contract claim must be dismissed.

### 3. *Implied Covenant of Good Faith and Fair Dealing*

In New Jersey, parties to a contract must not "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997) (citing *Palisades Properties, Inc. v. Brunetti*, 144 N.J. 177, 130 (1965)).

In order to succeed on such a claim, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and

benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss, or harm. *Wade v. Kessler Inst.*, 343 N.J. Super. 338, 347 (App. Div. 2001); *see Graddy v. Deutsche Bank*, 2013 WL 1222655, *4 (D.N.J. Mar. 25, 2013). Furthermore, proof of "bad motive or intention" is vital to an action for breach of the covenant of good faith and fair dealing. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001); *see Hunter v. Sterling Bank, Inc.*, 2011 WL 5921388, *6 (D.N.J. Nov. 28, 2011).

Defendants' third counterclaim fails to allege a claim upon which relief can be granted. Defendants do not allege sufficient facts indicating bad faith or ill intention. (Def. Ans. at 26-27.) Instead, they sweepingly claim "bad-faith performance of a contractual agreement and the unfair exercise of discretion" for what functionally amounts to Plaintiff's attempted enforcement of its contract rights. (Def. Ans. at 27); *see In re Petersburg Regency LLC*, 540 B.R. 508, 542 (D.N.J. 2015) ("[T]he duty [of good faith and fair dealing] cannot alter the terms of the written agreement or preclude a creditor from exercising its bargained-for rights under the loan agreement") (citing *Glenfed Fin. Corp.. Commercial Fin. Div. v. Penick Corp.*, 276 N.J. Super. 163, 175 (App. Div. 1994)). This does not constitute a properly plead claim under *Iqbal*. 556 U.S. at 679. As such, it must be dismissed.

B. <u>Defendants' Affirmative Defenses</u>

Plaintiff seeks to strike Defendants' affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). The parties spend a significant amount of time in their briefing arguing about the applicable standard in striking an affirmative defense.[4] Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

---

[4] The Court notes that both sides seem to have done some cherry-picking in articulating the standard.

10

impertinent, or scandalous material." Fed. R. Civ. P. 12(f). We must first, however, discuss the motion to strike standard in adequate depth.

"[M]otions to strike serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spend in litigating issues which would not affect the outcome of the case." *United States v. Kramer*, 757 F.Supp. 397, 410 (D.N.J. 1991) (citation omitted). The Third Circuit, though, has instructed district courts not to "grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). An affirmative defense is insufficient if it is not recognized as a defense to the cause of action. *F.T.C. v. Hope Now Modifications, LLC*, 2011 WL 883202, *2 (D.N.J. Mar. 10, 2011). "[A]n affirmative defense can be stricken [on the pleadings alone] only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *Id.*, at *1. Furthermore, "a motion to strike an affirmative defense will not be granted where its sufficiency depends on disputed issues of fact." *Signature Bank v. Check-X-Change, LLC*, 2013 WL 3286154, at *2 (citing *Total Containment, Inc. v. Environ Products, Inc.*, 1992 WL 208981, at *1 (E.D. Pa. Aug. 19, 1992).

This Court must note that "motions to strike . . . are highly disfavored." *Newborn Bros. Co., Inc. v. Albion Engineering Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *Hope Now*, 2011 WL 883202, at *1 ("Because of the drastic nature of the remedy . . . motions to strike are usually viewed with disfavor and will generally be denied")). Motions to strike are viewed in such a light because they are frequently brought by the movant "as a dilatory tactic." *Newborn Bros.*, 299 F.R.D. at 94 (citing *Hope Now*, 2011 WL 883202, at *1); *see* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1381 (3d ed. 2004) ("Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often

harassing character"). Thus, motions to strike will not be granted "unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros.*, 299 F.R.D. at 94. But, the Court's determination on a motion to strike is discretionary. *Id.*, citing *Hope Now*, 2011 WL 883202, at *1.

While affirmative defenses two through twenty one[5] in this case include *zero* facts—they are simply recitations of legal conclusions—this Court will not strike them. Motions to strike, as discussed, are highly disfavored. *See Newborn Bros.*, 299 F.R.D. at 94. Plaintiff appears to suffer no prejudice from these affirmative defenses. The defenses, as plead, may look meritless—but Plaintiff has not presented evidence that it suffers as a result of their assertion.

C. <u>Partial Summary Judgment</u>

The third issue at hand is Plaintiff's motion for partial summary judgment. Plaintiff seeks to establish that Defendants breached the $975,000 note and guarantees (count five) and breached the refinanced note and guarantees (count six).

When presented with a clear and unambiguous contract, the Court enforces the terms as written. *Cty. Of Morris v. Fauver*, 153 N.J. 80, 103 (1961). In this case, the $975,000 note states that the Borrower (McCann LLC) will pay the principal amount of $975,000, together with interest on the unpaid principal balance until paid in full, and will pay the entire outstanding balance of the loan immediately upon default and demand. (Compl. Ex. A at 2). The refinanced $100,000 note states that the Borrower (McCann LLC) will pay the principal amount of $96,195, together with interest on the unpaid principal balance until paid in full, and will pay the entire outstanding balance of the loan immediately upon default and demand. (Compl. Ex. K at 2). The contracts both further provide for attorneys' fees and expenses in the case of default and

---

[5] Affirmative defense one at least includes one sentence of factual assertions.

Borrower's refusal to pay. (Compl. Ex. A at 2; Compl. Ex. K at 2). Finally, the Guarantees provide that the Guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." (Compl. Ex. C; Compl. Ex. L).

Despite default and demand, Defendants have not paid. Defendants do not deny the validity of the relevant documents. Defendants have not actually provided a responsive statement to Plaintiffs' Local Civil Rule 56.1 State of Material Facts—thus, the facts are undisputed. Instead, Defendants first argue that the New Jersey Fair Foreclosure Act bars foreclosure. N.J.S.A. 2A:50-53 to -68. This is incorrect. The Act applies when the debtor or debtor's immediate family resides in the real property at issue. *Id.* at 2A:50-55. Defendants' interests in the properties here are commercial in nature, not residential. Second, Defendants argue that the mortgage modification agreement includes an unenforceable default interest rate hike. (Def. Opp. at 15). This argument fails because the amount due under a foreclosure is not a defense; instead, it is part of the Plaintiff's motion for a final judgment of foreclosure, which is not what Plaintiff has moved for here. *Amboy Bank v. Hannout*, 2015 WL 303533, at *4 (App. Div. Jan. 26, 2015). As such, Defendants can make this argument at a later date when the parties are litigating how much money, precisely, Plaintiff is owed.

Defendants argue that the record is "replete with factual issues that are intertwined with issues of intent and credibility that must be resolved by the jury" but present no evidence of any

13

such factual issues in their briefing. (Def. Opp. at 16). The only factual issues they present are the potentially problematic interest rates and turnaround times in negotiations.[6] (*Id.*).

Defendants do, however, make discovery demands. But the documents demanded are vital only to the assessment of damages. (*Id.* at 15-16). Defendants do not present any material evidence—nor do they argue in their briefing that any such evidence could possible exist, thus necessitating discovery for this issue—that Defendants did not breach the $975,000 note and its relevant guarantees or the refinanced note and its relevant guarantees. As such, Plaintiff is entitled to summary judgment on these two counts—Defendants breached and do not argue otherwise.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

Dated: 02/22/2018                                               _s/Robert B. Kugler__
                                                                ROBERT B. KUGLER
                                                                United States District Judge

---

[6] The fact that McCann LLC is not an unsophisticated party hurts this argument too—if anyone should understand the nature of contracts and contractual terms, and can bargain for more favorable contractual terms, it is a New Jersey attorney.